EDOK Criminal Complaint (Revised 6/13)

# United States District Court
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>**ROBERT CARNELL KNIGHT, JR.,**<br><br>*Defendant.* | **CRIMINAL COMPLAINT**<br><br>Case No.   21-MJ-471-KEW |

I, Benjamin Hallowell, the undersigned complainant, state that the following is true to the best of my knowledge and belief.

On or about November 24, 2019, in the Eastern District of Oklahoma, in Indian Country, **ROBERT CARNELL KNIGHT, JR.**, an Indian, committed the crime of Armed Robbery, in violation of Title 18, United States Code, Sections 2111, 1151, 1153 and Possession of a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, United States Code, Section 924(c).

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

(See attached Affidavit of Special Agent Ben Hallowell, which is attached hereto and made a part hereof by reference.)

☒   Continued on the attached sheet.

*/s/ Ben Hallowell*
Benjamin Hallowell
Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed at: MUSKOGEE, OKLAHOMA

Date: December 21, 2021

UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

*/s/ Kimberly E. West*
Signature of Judicial Officer



IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

## AFFIDAVIT

I, Special Agent Benjamin Hallowell, being duly sworn, depose and state that:

### INTRODUCTION

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI"). I have been so employed since July 2013. As an FBI Special Agent, I have conducted investigations into bank robberies, Hobbs Act robberies, violent gangs, and narcotics investigations. I am currently assigned to the FBI Philadelphia Division, and I am on a temporary duty assignment in the Oklahoma City Division – Ardmore Resident Agency, conducting criminal investigations, including, but not limited to, violations associated with Indian Country Crimes.

2. As a Federal Agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

3. The statements contained in this Affidavit are based in part on information provided by other agencies that I have received, directly or indirectly, from other law enforcement agents; independent investigation; and my experience, training, and background as a Special Agent with the FBI. Because this Affidavit is being submitted for the limited purpose of establishing probable cause to believe that **ROBERT CARNELL KNIGHT JR** committed the offense described below, I have not included every detail of the investigation. In addition, unless otherwise indicated, all statements contained in this Affidavit are summaries in substance and in part. The following is true to the best of my knowledge and belief.

### PROBABLE CAUSE

4. As will be shown below, there is probable cause to believe that **ROBERT CARNELL KNIGHT JR** committed violations of Title 18 U.S.C. § 2111, 1151 and 1153, Armed

1

Robbery, and Title 18 U.S.C. § 924(c), Possession of a Firearm in Furtherance of a Crime of Violence.

5. VENUE: The facts and circumstances alleged in this affidavit occurred within the Eastern District of Oklahoma. The crime occurred within the territorial boundaries of the Chickasaw Nation Reservation.

6. DEFENDANT: The defendant is **ROBERT CARNELL KNIGHT JR**, hereinafter referred to as KNIGHT. The defendant is a member of the Chickasaw Nation.

7. VICTIM: The victim is J.D., date of birth XX/XX/1996.

8. I received information regarding a crime which occurred in Carter County, Ardmore, Oklahoma. This affidavit is made in support of a Complaint and Arrest Warrant for KNIGHT for the crimes of 18 U.S.C. § 2111, 1151, and 1153, Armed Robbery, and 18 U.S.C. § 924(c), Possession of a Firearm in Furtherance of a Crime of Violence. The following information came from reports from the Ardmore Police Department.

9. On 11/24/2019 at approximately 2105 hours, Officer Nick Denewellis was dispatched to the 700 block of F St SE in reference to an armed robbery. Ardmore Dispatch stated the reporting party had been robbed at gunpoint by multiple subjects who had fled the area. Denewellis found the victims, R.D., J.D., and a minor child at 708 F SE. R.D. stated she and the minor child were in a back bedroom when the door suddenly opened. A white male subject entered and pointed a handgun at both R.D. and a minor child. He told them to stay where they were and took R.D.'s phone and Apple watch. R.D. stated the subject held her at gun point while other subjects were in her son's room (J.D.). All the suspects then fled out of the front door and ran westbound. R.D. described the white mail as about six feet tall with blue eyes, wearing jeans and a black bandana as a mask. Denewellis reported that J.D. said he awoke to multiple black male subjects in his room armed with shotguns, he stated they repeatedly struck him with the butt-stocks

demanding his money and weed. J.D. had multiple lacerations on his face and forehead, and his left eye was swelling. J.D. said he exited his room and went into the front bedroom to retrieve the items they demanded. After he gave them all his money and marijuana, he was ordered to lay face down on the ground. He was then again struck on the back of the head. J.D. stated the men exited his residence and proceeded westbound on 8th Ave SE. J.D. could not provide clothing descriptions but stated all but one had their faces concealed with bandannas except the Defendant, ROBERT KNIGHT JR., whom he knew as an acquaintance. J.D. stated to officers on scene that KNIGHT was the main subject who held him at gunpoint and repeatedly struck him. J.D. stated he believed the suspects entered through his back door which may not have been locked. He reported about one pound of marijuana and $1200.00 in cash was stolen by the men.

10. Officers set a perimeter on 817 E St SE, however no contact was made. Prior to leaving, neighbors in the area told officers they would call should anyone arrive at the residence. At 2218 hours, Ardmore Dispatch advised officers a gold Buick was seen leaving 817 E St northbound. Denewellis located the vehicle in the 500 block of Lake Murray Dr. Officers conducted a felony stop on the vehicle. The driver, J.T. stated to Officers that she and passenger B.K. had picked up A.S. from 817 E St SE and that A.S. had contacted her via text message, requesting a ride from that residence. A probable cause search yielded a large plastic sack of marijuana inside J.T.'s purse. She stated that A.S. had given it to her when he got into her vehicle. Denewellis located a large amount of currency on A.S., which was counted to $720.00. The cash was separated by rubber bands known on the street as a "rack". According to Ardmore PD Officer Naylor's report, a short time later, Ardmore Dispatch advised that the neighbor had called back and advised that a second car had just arrived at 817 E St SE. Officers Naylor and Johnson went to the residence and found an unoccupied maroon vehicle sitting in the driveway. They knocked on the door and announced "Police Department". The front door opened. Three black males were

seen inside, T.B., K.W., and a possibly unrelated subject who had just arrived named T.B. They were called out and sat on the front porch. Officers then conducted a protective sweep of the residence to confirm that there was no one else there. Officer Eller used a cell phone light/camera to look into the attic, locating a subject in the north end of the residence, above the kitchen. KNIGHT fell through the ceiling while complying with the officers' orders to come down from the attic. Officer Eller stated in his report that he was helping get KNIGHT down and saw there to be a plastic grocery sack sticking out of the top of his pants. He retrieved it and it matched the marijuana stolen from the victim. Sargent Pfrehm spoke with T.B. who gave verbal and written consent to search 817 E St SE, which was his residence. Eller did a search of the attic area where KNIGHT was located and found two more bags of marijuana that were wrapped in a grocery sack.

11.     The search also led to the discovery of a full-sized Winchester 1400 20 gauge shotgun and a Remington 870 tactical 12 gauge shotgun that were located in a box in the southeast bedroom. T.B. told Pffrehm that the glass jar under some clothes was from the victim and that one of the subjects must have ditched it in his bedroom when they all came in and attempted to hide out at his residence. Detective John Johnson responded as the on call investigator. He had all subjects brought to the station. He briefly spoke to B.K. and released her. He then started to interview K.W., but stopped that interview prior to asking him any questions about the crime and went to speak to the patrol officers further to gather more information. He then interviewed A.S. who appeared to be very nervous. A.S. was read the Miranda Warning and signed the Ardmore Police Department (APD) waiver form, agreeing to speak to investigators. At first he feigned ignorance of what was going on, however, he eventually confessed to being a part of the robbery. He stated that he was at B.K's house (1004 NW B St ) with his girlfriend J.T., when he got a call from KNIGHT via K.W.'s Facebook messenger app. He was asked to join them. K.W. and T.B. came and got him and he met everyone else at T.B.'s house. He said KNIGHT was there and

another black male whom he didn't know. A.S. described him as a shorter muscular black male with poofy hair and a goatee. At first, A.S. tried to say he stayed at the house while they left. Investigators confronted him and told him that they knew he was lying. He visibly deflated and then told investigators that yes he was there. A.S. said that he was there and he "tried to make sure nothing happened to the people that was there". A.S. said that he did not know the people they robbed but that everyone else that we had caught did. Investigators named off B.K., KNIGHT, and T.B. as the other suspects that committed the robbery. A.S. nodded his head in an affirmative motion to that. He said that they told him they had been staking it out. Investigators asked him who had the guns, specifically the shotgun, and he told Investigators that he had the handgun. He said it was not his gun that it was just there at the house, so he used it. He admitted his fingerprints would be on the handgun. He said that they went through the back door which was not even shut. He said he saw a girl and a little kid and that he didn't want anything to happen to the woman and the child and took her during the burglary. He said he dealt with the female and the child while the other guys handled the male. A.S. told investigators that he took the lady's watch and phone and then later gave them back. A.S. then broke down and started crying when investigators mentioned the child and woman freaking out. Investigators asked him who struck the male subject, he said that he just made sure that nothing happened to them. A.S. said they grabbed everything and ran out the door so he ran as well. He said they went back to the house, (T.B's) and next thing he knew police are knocking on the door and he was getting nervous. Investigators asked him how they divided the money and weed. A.S. replied that he got maybe an ounce of weed and that he had money that was in rubber bands. He emphatically said that the cash in his wallet was his. Investigators asked him again what happened to the handgun he used. He described it as a small black and nickel plated gun. He said he threw it on the couch. He said that they then returned to T.B.'s house and they divided the take he got a rack of the money and a smaller bag of the weed.

5

He then contacted his girlfriend J.T. to come pick him up where he was then located on the traffic stop and detained. A.S. expressed regret and pointed out that he did not hit or hurt the female or child. He indicated that either no one was supposed to be home or that it was just supposed to be the male target. A.S. said he wasn't sure who all had the shotguns but indicated it was not him as he had the pistol. A.S. stated the pistol was at the house so he used it and so was the mask (bandana). Investigators asked who came up with that plan. He said again that KNIGHT contacted him via B.K's Facebook. Investigators asked him again who had the shotgun. He said that he didn't know for sure but that the last person he saw with one was KNIGHT. A.S. told investigators that he was trying to work but that his record keeps him unemployed and that he is trying to do right by his girlfriend and her kids, who have been calling him Dad. Investigators allowed him to speak to and hug his girlfriend. He resealed the cash in his wallet to her prior to being walked across the street where he was booked in on one count of Robbery First Degree.

12. Investigators then interviewed KNIGHT. KNIGHT who was wearing an all green sweatshirt and pants and was covered in insulation and dirt. He said that he had heard there was a shooting on social media and hid in the attic. Investigators read KNIGHT the Miranda warning and he signed the APD waiver and agreed to speak to Investigators. At first, KNIGHT told Investigators he was not involved and that he could not be seen in his green outfit. Investigators were later was told by Officer Jared Johnson that KNIGHT had bragged to him outside after being detained that wearing green made him invisible to cameras. Investigators told KNIGHT that two people had already told investigators he was there and involved, not counting the victim who recognized him. He confessed to being a part of the robbery. He said that he got a call on Facebook to come "hit a lick" and that he went over to the house. KNIGHT tried to claim that he was acting as a lookout, and claimed to have never entered the house. At the time of the interview, investigators did not have all the information but were told by officers that the victim had said that

he knew KNIGHT and recognized him and called him by name. Investigators asked him who all was with him. He said it was him, a Blood gang member, and two crips. He said it was him, K.B., T.B., and T.M. However, investigators did not then, nor do they now, have any corroborating evidence from other witnesses that indicates T.M. was involved. Investigators now believe that KNIGHT was trying to put T.M. in place of T.B. as they are similar builds. KNIGHT was giving investigators all sorts of names and descriptions, but being nonspecific about names. Investigators asked him who's idea it was to hit the house and he said it was the crips. The victim had stated that KNIGHT was one of the ones who hit him with the shotgun and demanded money and the drugs. KNIGHT did admit to them leaving T.B.'s house and going over to the victims house, but refused to admit being in the house or having a gun. He stated they saw that scanner page was saying that someone had been shot so he decided to hide in the attic. Investigators asked him who had the shotgun and he said he didn't know. He did say that they went back to T.B.'s. He said he got no cash, just weed. Investigators later learned that KNIGHT had a large amount of marijuana in his pants at the time he was detained. Investigators asked him who had the pistol and he said that A.S. did. KNIGHT said that he was getting ready to leave when he heard police coming around and that he heard there was a shooting and got in the attic.

13. Based on a review of this case and based on my knowledge and experience with violent crimes, I, as your Affiant have probable cause to believe that **ROBERT CARNELL KNIGHT JR** committed violations of 18 U.S.C. § 2111, 1151, and 1153, Armed Robbery, and 18 U.S.C. § 924(C), Possession of a Firearm in Furtherance of a Crime of Violence.

Respectfully Submitted,

*Ben Hallowell*
Benjamin Hallowell
Special Agent
Federal Bureau of Investigation

Sworn before me this day, December 21, 2021.

_____
United States Magistrate Judge
Eastern District of Oklahoma